UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **MAX GEESEY, individually and as trustee of The Mattison Nominee Trust, *et al.*,**  <br><br>**Plaintiffs,**<br><br>v.<br><br>**FIRST AMERICAN TITLE INSURANCE COMPANY,**<br><br>**Defendant.** | Civil Action No. 25-10143-BEM |

<u>**MEMORANDUM ORDER**</u>

**MURPHY, J.**                                                                                                                  March 10, 2025

Defendant First American Title Insurance Company ("First American") has moved to dismiss the Complaint, Dkt. 1, Ex. B ("Compl."), brought by Plaintiffs Max Geesey and Daniel Aho ("Plaintiffs") under Rule 12(b)(6). Dkt. 7. The Court finds that First American's arguments go toward the merits of the case and accordingly DENIES the motion.

**I.      RELEVANT BACKGROUND**

The Court draws the following facts from the Complaint and accepts them as true for purposes of the instant motion.

Plaintiffs were targets of a fraudulent scheme designed to charge them $525,000 for property that the purported seller did not actually own. Compl. ¶¶ 4–8, 15. Plaintiff Geesey engaged Attorney Alan Shocket to represent him in the transaction as purchaser, on behalf of a then-unformed trust. *Id.* ¶¶ 11, 13.

During due diligence, Geesey learned that the at-issue property might be subject to environmental restrictions on building and sought a determination from the relevant local agency,

the Concord Natural Resources Commission ("NRC"). While that process was pending, the NRC received a phone call from an unidentified male claiming to be the property owner and requesting that the pending application be removed from the NRC's agenda. *Id.* ¶ 20. The NRC representative informed Geesey of the phone call but stated that, because the caller was not the property owner, the application would not be affected. *Id.* In fact, it turned out that the unidentified caller was the real owner's husband, a point clarified in a later email, which Plaintiffs claim was never shared with them. *See id.* ¶¶ 27–28, Ex. D. The NRC ultimately conducted its hearing on the property without further objection. *Id.* ¶ 26.

As part of the overall transaction, Plaintiffs purchased two title insurance policies from First American. *Id.* ¶¶ 32, 48; *see id.*, Exs. E, G. In the insurance transaction, Attorney Shocket served a "dual" role as both closing counsel for Geesey and title agent for First American. *Id.* ¶¶ 13, 42; *see also* Dkt. 8 at 17–18. In that process, Attorney Shocket knowingly committed several malfeasances, including misrepresenting the terms of the insurance policies, Compl. ¶¶ 111–12; forging documents, *id.* ¶¶ 45–47; and not revealing the truth of those forged documents, *id.* ¶¶ 115–16.[1]

Following consummation of the fraudulent purchase, the real property owners sued Plaintiffs to quiet their title. *Id.* ¶¶ 57–58. Plaintiffs sought defense from First American under their title policies. *Id.* ¶ 62. However, First American denied those claims on the basis that Plaintiffs had "actual knowledge and/or notice that someone was claiming ownership of the Property they were in the process of purchasing." *Id.*, Ex. H at 4. Under the terms of the insurance policies, coverage is excluded for matters "Not Known to [First American], not recorded in the

---

[1] As a reminder, these are Plaintiffs' allegations, taken as true for purposes of this motion. Attorney Shocket is not party to this case, and the Court does not intend to impugn his reputation by recitation of the Complaint.

Public Records at the Date of Policy, but Known to [Geesey] and not disclosed in writing to [First American] by [Geesey]" prior to issuance.  *Id.* ("Exclusion 3(b)").  Both policies define "Known" as "[a]ctual knowledge or actual notice."  Dkt. 8 at 9 (citing the policies).  Plaintiffs contested the denial, Compl. ¶¶ 66–69, and ultimately filed this lawsuit.

## II.     DISCUSSION

The Court expresses no opinion as to the ultimate merits of First American's dismissal arguments, but they are uniformly premature.

Contrary to Defendants' suggestion, Dkt. 8 at 9, Plaintiffs have not alleged having actual knowledge.  *See* Compl. ¶ 23.  Whether Plaintiffs had "actual notice," based on their interactions with the NRC, is a question of fact not suitable for a motion to dismiss.[2]  *See Emmons v. White*, 58 Mass. App. Ct. 54, 65 (2003) ("Actual notice is a question of fact.") (citing *McCarthy v. Lane*, 301 Mass. 125, 128 (1938)) (defining the phrase in the closely related context of the recording statute).  It is not obvious to this Court, as a matter of law, that Plaintiffs "ought to [have] give[n] heed," *id.*, to those circumstances in the same way as, for example, a notice of *lis pendens* filed by the United States government.  *Cf. Manchester Fund*, 332 N.J. Super. at 346–47 (cited in Dkt. 8 at 11).

In adopting *Emmons*'s reading of the phrase "actual notice," the Court is particularly motivated by the principle that courts should "assume that every word in an insurance contract serves a purpose[] and must be given meaning and effect whenever practicable."  *Dorchester Mut.*

---

[2] This result is supported by the cases First American cites.  *See Kirwan v. Chicago Title Ins. Co.*, 9 Neb. App. 372, 376 (2000) (case decided on summary judgment), *aff'd in part, rev'd in part*, 261 Neb. 609 (2001); *Manchester Fund, Ltd. v. First Am. Title Ins. Co.*, 332 N.J. Super. 336, 338 (Law. Div. 1999) (same); *Enterprise Timber, Inc. v. Washington Title Ins. Co.*, 76 Wash. 2d 479, 481–82 (1969) (case decided on "motion challenging the sufficiency of the evidence" where the Court "weigh[ed] the evidence and enter[ed] findings of fact and conclusions of law").

*Ins. Co. v. Krusell*, 485 Mass. 431, 437 (2020) (internal quotes omitted).  Here, the inclusion of the word "actual" suggests that the phrase must be distinguished from close cousins such as "inquiry notice," roughly the standard First American proposes, *see* Dkt. 8 at 11 (citing *Enterprise Timber*, 76 Wash. 2d at 483–84).  *See Emmons*, 58 Mass. App. Ct. at 65 ("[K]nowledge of facts which would ordinarily put a party upon inquiry is not enough." (quoting *Tramontozzi v. D'Amicis*, 344 Mass. 514, 517 (1962))).  Accordingly, First American's motion to dismiss the contract claims (Counts I and II) is denied.

Elsewhere, First American's argument hinges on whether Attorney Shocket performed certain acts as First American's title agent or as Plaintiffs' attorney.  *See* Dkt. 8 at 15 ("Attorney Shocket took these alleged fraudulent actions in his capacity as Plaintiffs' counsel, not title agent. . . . Attorney Shocket took these actions in his capacity as Plaintiffs' counsel, not title agent.").  But "[w]hether one has acted as an agent is ordinarily a question of fact." *Pedersen v. Leahy*, 397 Mass. 689, 691 (1986).  Resolution of that issue is not appropriate on the current record.  Accordingly, First American's motion to dismiss Plaintiffs' claims under M.G.L. ch. 93A (Counts III and IV) and for breach of the implied covenant (Count VI) is denied.

Relatedly, Plaintiffs' fraud allegations undermine First American's ability to rely, as a matter of law, on its merger clause to absolve it of any liability for Attorney Shocket's alleged misrepresentations.  For the reasons stated above, it is not yet determined whether (or which of) those allegations inure to First American.  "[T]he settled rule of law is that a contracting party cannot rely upon [a merger] clause as protection against claims based upon fraud or deceit." *Sound Techniques, Inc. v. Hoffman*, 50 Mass. App. Ct. 425, 429 (2000) (citing cases).  In some circumstances, "a plaintiff's reliance on oral statements in light of contrary written statements is unreasonable as a matter of law."  *Marram v. Kobrick Offshore Fund, Ltd.*, 442 Mass. 43, 59

(2004). However, "courts have so held . . . generally only after some record has been established on a motion for summary judgment or after a trial." *Id.* at 59–61.

Likewise, the Court cannot now decide that Attorney Shocket's alleged knowledge must be imputed to Plaintiffs. *See Cannonball Fund, Ltd. v. Dutchess Cap. Mgmt., LLC*, 33 Mass. L. Rptr. 623, 2016 WL 7189688, at *3 (Mass. Super. Oct. 4, 2016). "In general, the knowledge of an agent acting within the scope of its employment is imputed to the principal." *Id.* "However, under the so-called adverse interest doctrine, 'an agent's knowledge of his own unauthorized acts is not imputed to the principal when the agent has acted fraudulently toward the principal and is engaged in an independent fraudulent act from which the principal does not benefit.'" *Id.* (quoting *Sunrise Properties, Inc. v. Bacon, Wilson, Ratner, Cohen, Salvage, Fialky & Fitzgerald, P.C.*, 425 Mass. 63, 67 (1997)). "The Court cannot conclude, as a matter of law, that imputation is mandated in this case and, therefore, that the adverse interest doctrine does not apply." *Id.* Accordingly, First American's motion to dismiss the negligent misrepresentation claim (Count V) is denied.

### III.   CONCLUSION

The Court therefore DENIES First American's motion to dismiss. *See* Dkt. 7.

IT IS SO ORDERED.

                                              /s/ Brian E. Murphy_____
                                            United States District Judge